FILED

January 20 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0366

DA 14-0366

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2015 MT 17N

IN THE MATTER OF:

A.J.,

      A Youth in Need of Care.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. DDN 11-06
Honorable James P. Reynolds, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Julie Brown, Montana Legal Justice, PLLC; Missoula, Montana

      For Appellee:

      Timothy C. Fox, Montana Attorney General; Brenda K. Elias, Assistant
Attorney General; Helena, Montana

      Leo Gallagher, Lewis and Clark County Attorney; Tara Harris, Deputy
County Attorney; Helena, Montana

Submitted on Briefs:  December 17, 2014
Decided:  January 20, 2015

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 J.J. (Father) appeals from the order entered by the First Judicial District Court, Lewis and Clark County, terminating his parental rights to minor child, A.J., and granting legal custody to the Department of Public Health and Human Services (Department). The issue on appeal is whether the District Court erred by finding that Father voluntarily relinquished his parental rights.

¶3 Father and J.F. (Mother) are the biological parents of A.J. In his early years, A.J. lived in Wisconsin with Father, and had visitation with Mother. He then began living with Mother and moved to Montana with her. In December 2010, the Department received a report that A.J. and his younger half-brother had been subjected to physical neglect while in Mother's care. The Department removed A.J. and his half-brother and placed them in a licensed kinship foster home in Helena.

¶4 On February 16, 2011, the District Court conducted a show cause hearing. Father appeared telephonically and was represented by counsel. Father stipulated to emergency protective services, temporary investigative authority, and indicated that he intended to relinquish his parental rights to A.J.

¶5 On June 23, 2011, the court conducted a disposition hearing and, upon the Department's motion, approved a treatment plan for Father. The treatment plan required Father to participate in an Interstate Compact Home Study to determine if A.J. could safely reside with him, and undergo a psychological evaluation. While Father did not attend the hearing, Father's counsel stated that Father "made it clear that he's not going to participate in a treatment plan." The Department's child protection specialist, Kristie Mannix, testified that she had contacted Father and discussed the possibility of returning A.J. to him. Mannix noted that Father was "very inconsistent" in his desire to parent A.J. and stated several times that he wanted to relinquish custody of the child.

¶6 After Father's treatment plan was ordered, Father sent the District Court two letters expressing frustration with the Department. In the letters, Father alleged an order from a Wisconsin court gave him custody and that A.J. should be returned to him. Father, though represented by counsel, filed a pro se motion further asserting that a Wisconsin order granted him custody and the Department was guilty of kidnapping and custodial interference.

¶7 The District Court conducted a hearing on Father's motion. Father maintained that Wisconsin had jurisdiction over the proceedings and that he would not follow the court ordered treatment plan. The State explained that Montana law was controlling because the child resided in Montana. The court and the State both urged Father to address his jurisdictional concerns with his counsel.[1]

---

[1] Father's jurisdictional concerns are not the subject of this appeal and Father does not contend this Court is without jurisdiction.

3

¶8 On February 3, 2012, the Department requested the court to extend temporary legal custody of A.J. The Department noted that Mother had made efforts in her treatment plan, but Father had failed to successfully complete any task on his treatment plan. Although the District Court continued to extend the Department's temporary legal custody over the course of the next two years, Father steadfastly refused to work his treatment plan.

¶9 On February 7, 2014, the Department filed a petition for permanent legal custody and for the termination of Father's parental rights. The Department alleged that "[Father] has failed to complete his court ordered treatment plan and his actions indicate that he will not work [with] the Department on any plan to try and reunify him with his son."

¶10 On May 6, 2014, Father signed a sworn affidavit stating: "After carefully considering the best interests of my minor child, I hereby relinquish care, custody, and control of [A.J.] . . . . I knowingly, unequivocally and voluntarily transfer permanent legal and physical custody of [A.J.] to the Department." In addition to the affidavit, Father submitted a letter indicating that he voluntarily relinquished his parental rights, but was displeased with the Department.

¶11 On May 9, 2014, the District Court entered an order terminating the parent-child relationship between Father and A.J. The court noted that Father "failed to follow through on any of the requests that were made through this Court, with regard to parental his rights," and that the "only thing he's been consistent about is that he's been angry at the Department and acted angrily and uncooperatively." The court accepted Father's

sworn affidavit "as a voluntary statement on his behalf of waiver of all of his parental rights."

¶12 Father argues that his relinquishment of parental rights was not voluntary under § 42-2-417, MCA, though the record does not indicate Father petitioned the District Court for relief under that provision. Section 42-2-417, MCA, states, in relevant part, that the "court shall set aside a relinquishment and consent to adopt if the individual who executed the relinquishment and consent establishes: (a) by clear and convincing evidence, before a decree of adoption is issued, that the consent was obtained by fraud or duress . . . ."

¶13 Father did not comply with his treatment plan, signed an affidavit explicitly stating that he knowingly and voluntarily was relinquishing his parental rights, submitted a letter indicating that he voluntarily relinquished his parental rights, and made several statements during the course of the proceedings that he was going to relinquish his rights. Substantial evidence supports the District Court's finding that Father's relinquishment of his parental rights was voluntary and the not the result of fraud or duress.

¶14 Father also argues the court erred by not providing a hearing to ensure that Father voluntarily terminated his parental rights. Father contends that "[i]n order to ensure a parent's right to fundamental fairness in dependency and neglect proceedings, a district court should, when there is a question about the voluntariness of a relinquishment, hold a hearing wherein the natural parent is questioned with regard to his relinquishment."

¶15 Father fails to cite statutory authority mandating such a hearing, but more importantly, Father received fundamentally fair procedures. The District Court appointed

5

Father an attorney and made concerted efforts throughout the proceedings to ensure Father understood his rights. Father participated in the court proceedings. The District Court did not err by terminating Father's parental rights.

¶16   We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal Operating Rules, which provides for noncitable memorandum opinions. Any legal issues are controlled by settled Montana law, which the District Court correctly interpreted, and the District Court did not abuse its discretion in terminating Father's parental rights.

¶17   Affirmed.


/S/ JIM RICE


We concur:

/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ BETH BAKER

6